IN THE SUPREME COURT OF TENNESSEE

AT JACKSON

FILED

June 3, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | **FOR PUBLICATION** |
| | ) | |
| Appellant, | ) | **Filed: June 3, 1996** |
| | ) | |
| vs. | ) | Madison County |
| | ) | |
| MARIO LAMONT WILSON, | ) | Hon. J. Franklin Murchison, Judge |
| | ) | |
| Appellee. | ) | No. 02S01-9505-CC-00045 |
| | ) | |

For the Appellee:

Hughie Ragan
Jackson, TN

For the Appellant:

Charles W. Burson
Attorney General & Reporter

Michael E. Moore
Solicitor General

Michael W. Catalano
Associate Solicitor General
Nashville, TN

James G. Woodall
District Attorney General

Donald H. Allen
Asst. District Attorney General
Jackson, TN

**O P I N I O N**

COURT OF CRIMINAL APPEALS AFFIRMED                    White, J.

A jury convicted defendant, Mario Lamont Wilson, of three counts of aggravated assault and of felony reckless endangerment and possession of a deadly weapon with the intent to commit a felony. The Court of Criminal Appeals affirmed Wilson's felony reckless endangerment conviction and sentence, but reversed and dismissed the convictions for aggravated assault and possession of a deadly weapon. We granted permission to appeal to consider whether the Court of Criminal Appeals erred when it dismissed Wilson's convictions for aggravated assault.[1] Although we conclude that Wilson's convictions for aggravated assault may not stand, we do not adopt entirely the reasoning of the Court of Criminal Appeals. Rather, we affirm the dismissal of the aggravated assault charges because the evidence is insufficient to prove that Wilson intentionally and knowingly caused another to reasonably fear imminent bodily injury.

An aggravated assault conviction requires proof beyond a reasonable doubt that an accused committed an assault as defined in Tennessee Code Annotated Section 39-13-101[2] and either (a) intentionally, knowingly, or recklessly caused serious bodily injury to another or (b) used or displayed a deadly weapon. Tenn. Code Ann. § 39-13-102(a)(1)(A), (B)(1995 Supp.).

---

[1]The state does not challenge, on double jeopardy grounds, the dismissal of Wilson's conviction for possession of a deadly weapon. Neither the state nor defendant briefed or argued any of the issues raised in defendant's Rule 11 application.

[2]A person commits assault who:
    (1)    Intentionally, knowingly or recklessly causes bodily injury to another;
    (2)    Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or
    (3)    Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

Tenn. Code Ann. § 39-13-101(a)(1991 Repl.).

The aggravated assault charges against Wilson were based on accusations that Wilson unlawfully, intentionally, or knowingly assaulted the victims by displaying or using a deadly weapon "causing [the victim] to reasonably fear imminent bodily injury." To establish these charges, the state was required to prove beyond a reasonable doubt that Wilson intentionally or knowingly caused the victims to fear imminent bodily injury by his use or display of a weapon.

In determining the sufficiency of the evidence on appeal, we are guided by well-established principles. As an appellate court, we must consider the evidence in the light most favorable to the prosecution in determining whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. Rule 13(e). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as triers of fact. We cannot substitute our findings for theirs on appeal.

These principles apply to findings of guilt based on direct, circumstantial, or both direct and circumstantial evidence. State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961). However, before an accused may be convicted of a criminal offense based upon circumstantial evidence alone, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant." State v. Crawford,

3

470 S.W.2d 610 (Tenn. 1971). "[A] web of guilt must be woven around the defendant from which [the defendant] cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." Id. at 613. We now apply those long-established principles to the facts before us.

Two days before defendant fired shots at the residence of Kenneth Hodges, Hodges and defendant had an angry, verbal confrontation. Although the police were called to the scene, no charges were filed. Two days later, on the day of the shooting at issue here, defendant was involved in an argument with Lamont Johnson, Hodges' close friend and next door neighbor. Following this argument, Lamont Johnson shot at defendant as defendant drove down Whitehall Street in Jackson, the street on which Hodges' residence was located.

Shortly after 3:00 p.m. on that day, Kenneth Hodges left his home leaving his brother, James Hodges, his cousin, Gregory Hodges, and three others, Linda Sain, Chandara Haley, and Chequita Sampson at the residence.[3] At approximately 3:30 p.m., Chandara Haley and Chequita Sampson left with their two children to walk to a nearby store. As they were walking back towards the Hodges' home, an older yellow Cutlass Supreme stopped directly in front of the Hodges' residence on the opposite side of the street. One passenger leaned across in front of the driver and

_____

[3]Aris Jones, a friend of Lamont Johnson, testified that he was also in the house. He was not named as a victim in the indictment.

4

began firing shots at the house.[4]  The passenger in the rear seat also fired at the house.  Haley identified defendant as the passenger in the front seat, David Fenner as the driver, and Turell Robinson as the passenger in the back seat.[5]

When the first shots were fired, James Hodges was in the rear of the house.  Linda Sain was in the bedroom. Greg Hodges was in the living room.  Just before the first shots were fired, Greg Hodges looked out the front door.  The state relies on these facts to establish that defendant committed aggravated assault.

The state has proved beyond a reasonable doubt that defendant fired the shots and that the victims reasonably feared imminent bodily injury.  That, however, does not end the inquiry.  In addition to those two elements of the offense, known in common-law parlance as the actus reus, or criminal act, the aggravated assault statute requires proof of criminal intent, or mens rea.  That criminal intent requires that defendant act either intentionally or knowingly.  By requiring that the act be either intentionally or knowingly committed, the legislature has required the state to prove an element in addition to the mere voluntary commission of the criminal act.

One acts intentionally "with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." Tenn. Code Ann. § 39-11-

_____

[4]Witnesses testified that at least eight shots were fired into the house.

[5]Neither David Fenner or Turell Robinson were charged.

302(a)(1991 Repl.). A person acts knowingly when, with respect to a result of the person's conduct, "the person is aware that the conduct is reasonably certain to cause the result." Id. at (b). The issue for our determination is whether the facts support a conclusion beyond a reasonable doubt that defendant intentionally or knowingly caused the victims to fear imminent bodily injury.

The state's argument in this case demonstrates some confusion. They vehemently argue that aggravated assault is not a "specific intent" crime. Commentators have noted the confusion engendered by the use of the phrase "specific intent" since "[a]ny specifically required actual intent other than to do the deed which constitutes the *actus reus* of the particular crime, is unquestionably a special mental element; but not every special mental element is a specific intent in the true sense of the word 'intent'." R. Perkins, Criminal Law 751 (1969)(hereafter Perkins, supra, at _____). Nonetheless, we have generally used the general intent - specific intent nomenclature in Tennessee. The aggravated assault statute, however, is more correctly characterized as a statute requiring proof of a special mens rea, since it requires proof of a mental element beyond the mere doing of the criminal act.

The state's argument seems to merge the separate concept of mens rea (or special mental element) with the issue of specifically intended victims. For example, the state, in suggesting that the aggravated assault statute does not require a finding of specific intent, observes:

6

> that is to say it is not necessary for the state to prove that the defendant intended to assault a specific person who was assaulted.

While the state's contention that they are not required to prove that defendant intended to assault "a specific person who was assaulted" is correct, its contention that aggravated assault does not require proof of a special mental element is not.

The subsection of the aggravated assault statute at issue in this case requires proof of either of two specified mental elements. Stated differently, in addition to establishing that defendant voluntarily did the criminal act, the statute requires proof of one of two mental elements, either intentionally or knowingly. In offenses requiring proof of a special mental element, the intent is an essential element of the offense which must be alleged and proved by the prosecution. Perkins, supra, at 762-64. When the definition of a crime requires that a defendant act knowingly or intentionally, the burden of proof is on the prosecution to prove the mental element of knowledge beyond a reasonable doubt. See J. Miller, Criminal Law § 17, at 57 (1934).

The aggravated assault statute under which the state seeks conviction of defendant requires that the state prove either that defendant shot into the Hodges' home (a) for the purpose of causing the victims to fear imminent bodily injury (intentionally) or that defendant was (b) aware that the shooting would cause the victims to fear imminent bodily injury (knowingly). Proving one or the other of these alternative mental elements

7

is not the same as proving that defendant intended to assault a specific person that was assaulted.

Turning to the facts of this case, we find that the state failed to establish the requisite mental element of this crime beyond a reasonable doubt. In order to establish that defendant acted knowingly or intentionally, the proof would have to establish that defendant was aware that persons were inside the Hodges' residence at the time of the shooting. Obviously, defendant could not shoot for the purpose of causing fear or shoot with the reasonable certainty that fear would be caused absent an awareness that someone was inside.

The state poses two arguments for the purpose of satisfying their proof requirement of mens rea. First, the state argues that the previous altercations with Kenneth Hodges and Lamont Johnson establish an intent to harm these two individuals. Defendant's intent to harm these individuals, however, does not establish the mens rea for aggravated assault since there is no proof that defendant thought either of the two were in the Hodges' residence[6] at the time of the shooting.[7]

The state's second argument focuses on the presence of Gregory Hodges at the time of the shooting. The state contends that since he was

---

[6]The evidence establishes that Ken Hodges' automobile was not present at his residence.

[7]A further example is present within the facts of this case. When Lamont Johnson shot at defendant as he drove down Whitehall Street, evidence of each of the elements of aggravated assault was present. If Johnson had fired into defendant's house not knowing whether he was inside, and had not actually injured anyone, sufficient evidence would not be present to sustain an aggravated assault conviction.

8

"right in the front door," defendant must have seen him, thereby making defendant aware that a potential victim was inside. If the evidence established that defendant saw Gregory Hodges (or anyone, for that matter) inside or around the house, the state would be correct. The evidence, however, does not establish that fact.

Gregory Hodges testified that he was standing "right in the front door" of the house between the closed glass storm door and the half-open wooden door. As he turned to leave, Hodges testified that he heard shots and breaking glass. Gregory Hodges saw Chandara Haley approaching the house, but he did not see the yellow Cutlass. He was a "couple of feet" from the door when he heard the first shots. Fortunately, he was not injured in any way and was not struck by flying glass. The demonstrative evidence in the record - photographs - support a conclusion that the interior and storm doors were closed when the shots were fired.[8] Had Hodges been standing between or at the two doors at the moment of the shots, he could not have escaped injury.

The shots were fired on a Tuesday afternoon. Neither Lamont Johnson nor Ken Hodges, defendant's assumed targets, were present in the area. Ken Hodges' automobile was gone as well. No testimony pointed to any facts - lights, noises, or other signs - which would indicate to a passerby that the house was occupied.

---

[8]The photographs show that the window in the interior door and the glass in the storm door are both completely shattered.

Without question, defendant acted recklessly and criminally. Had the destructive shots struck anyone, defendant could have been convicted of aggravated assault under Tennessee Code Annotated Section 39-13-101(a)(1)(1991 Repl.) which includes the mens rea of recklessness. Tenn. Code Ann. §§ 39-13-101(a)(1) & 39-13-102(a)(1)(A)(1991 Repl. & 1995 Supp.). Additionally, as this opinion and that of the Court of Criminal Appeals recognizes, defendant's conduct constitutes the offense of felony reckless endangerment. Tenn. Code Ann. § 39-13-103(b)(1991 Repl.).

The statute under which the state opted to prosecute defendant required the state to establish beyond a reasonable doubt that defendant's conduct was intentional or knowing, as defined by the criminal code. The proof that the occupants were justifiably fearful for their lives, while essential to establishing the actus reus of the offense, does not establish in any way the requisite mens rea. For these reasons, we affirm the reversal of defendant's three convictions for aggravated assault and dismiss those charges. The remainder of the Court of Criminal Appeals' decision, including the affirmance of the reckless endangerment conviction and sentence[9] and the dismissal of the weapons charge, is not altered.

_____
Penny J. White, Justice

CONCUR:

---

[9]Wilson was sentenced to two years for felony reckless endangerment. The trial court ordered him to serve eleven months and twenty-nine days with the remainder to be served on intensive probation.

Birch, C.J.
Drowota, Anderson, Reid, J.J.