## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### FEBRUARY SESSION, 2000

FILED

March 23, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,              *

      Appellee,               *

                              *

vs.                              *

                              *

CHRISTOPHER MAX HALL,            *

      Appellant.              *

No. M1998-00180-CCA-R3-CD

PUTNAM COUNTY

Hon. Leon Burns, Jr., Judge

(Aggravated Assault and
Misdemeanor Stalking)

For the Appellant:

**H. Marshall Judd**
Asst. Public Defender
215 Reagan Street
Cookeville, TN  38501


**David Neal Brady**
District Public Defender

For the Appellee:

**Paul G. Summers**
Attorney General and Reporter

**David H. Findley**
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
2d Floor, Cordell Hull Building
Nashville, TN 37243-0493


**William Edward Gibson**
District Attorney General

**Ben Fann**
Asst. District Attomey General
1516A E. Spring Street
Cookeville, TN  38506


OPINION FILED: _____

AFFIRMED


**David G. Hayes,** Judge

**OPINION**

The appellant, Christopher Max Hall, was convicted by a Putnam County jury of the offenses of aggravated assault and misdemeanor stalking.[1]  For aggravated assault, the trial court imposed a split confinement sentence of four years and six months with one year of confinement in the jail followed by intensive probation for the remainder of the sentence.  For stalking, the court imposed a concurrent six months sentence in the county jail.  On appeal, the appellant challenges the sufficiency of the evidence for each conviction and the denial of total probation.

After our review, we affirm the judgment of the trial court.

BACKGROUND

After school dismissed on April 19, 1996, Jimmy Lyons and Amber Griffin, high school students at Upperman High School in Baxter, walked toward the parking lot to Jimmy's vehicle.  Jimmy and Amber, who had been dating for five months, were met in the parking lot by the twenty-four year old appellant.  The appellant had been dating fourteen year old Amber "off and on" for several months.  The appellant began arguing with Amber, ordering her to get into his vehicle.  When she refused, the appellant threatened to "beat up" Jimmy if she did not get in the car.  Amber got into the appellant's vehicle and told Jimmy that she would meet him a little later that afternoon at "Crossroads" in Baxter.

Amber rode with the appellant around Baxter as the two discussed their troubled relationship.  When she requested that he take her to"Crossroads," he refused and drove past the meeting point.  The appellant "pulled a gun out and sat it down on [her] seat and told [Amber] that he wanted [her] to shoot him."  Amber

---

[1]The victim of the aggravated assault was Amber Griffin; the victim of the stalking offense was Jimmy Lyons.

began screaming hysterically, and the appellant said, "[N]o, I should shoot you." Then, the appellant threw the gun on the back seat.

Afterwards, he took Amber back to "Crossroads" and left her with Jimmy. On the drive to Amber's home, the appellant sped past Jimmy and positioned his vehicle so that Jimmy could not maneuver around him. The appellant got out of his vehicle and told Amber that he was coming to her house that evening. When she refused, he threw a cigarette butt at Amber and knocked the truck window "off the track." Then, the appellant followed Jimmy to Amber's home.

At trial, Jimmy testified that the appellant would follow him to school and then follow him home; and on some occasions, the appellant would come into Lyons' place of employment. The appellant continuously threatened to "beat him up" because of his relationship with Amber. Jimmy testified that he feared the appellant "because he was making threats and stalking [him]." He related that he ended his relationship with Amber soon thereafter.

At the conclusion of the proof, the jury returned guilty verdicts for aggravated assault of Amber Griffin and stalking of Jimmy Lyons.

## I. SUFFICIENCY OF THE EVIDENCE

The relevant question upon a sufficiency review of a criminal conviction, be it in the trial court or an appellate court, is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979). See also Tenn. R. App. P. 13(e); Tenn. R. Crim. P. 29(a). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on

3

appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

## A. Aggravated Assault

The appellant challenges the sufficiency of the evidence for his aggravated assault conviction. Specifically, he argues with regard to the aggravated assault charge that Amber "did not reasonably fear imminent bodily injury" because the appellant never aimed the gun at her. He asserts the fact that their relationship continued for nearly a year after this incident is proof that she did not reasonably fear for her life. Furthermore, he contends that the State failed to prove the requisite criminal intent citing State v. Wilson, 924 S.W.2d 648 (Tenn. 1996).

To sustain a conviction for aggravated assault, the State must prove that the appellant intentionally and knowingly caused "another to reasonably fear imminent bodily injury" while using or displaying a deadly weapon. Tenn. Code Ann. §§ 39-13-101(a)(2) (1991); 39-13-102(a)(1)(B) (Supp. 1996). A person acts intentionally "with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." Tenn. Code Ann. § 39-11-302(a) (1991). One acts knowingly when "with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-302(b).

Although the appellant argues the victim's fear was not reasonable because of his failure to point the gun at the victim, the statute only requires that the gun be displayed to the victim. Moreover, her relationship with the appellant following this incident does not bear upon the relevance of this particular incident. The appellant's threat while displaying the weapon that ". . . I should shoot you" is sufficient to

4

support a finding of "reasonable fear of imminent bodily injury."[2]  Accordingly, we find the proof legally sufficient to sustain his conviction for aggravated assault.

## B.  Stalking

Although the appellant presents no argument for his stalking conviction regarding the victim Jimmy Lyons, we conclude that the evidence was legally sufficient to sustain the conviction.  "A person commits the offense of stalking who intentionally and repeatedly follows or harasses another person in such a manner as would cause that person to be in reasonable fear of being assaulted, suffering bodily injury or death."  Tenn. Code Ann. § 39-17-315 (Supp. 1996).  The offense further defines the term "follows" to mean "maintaining a visual or physical proximity over a period of time to a specific person in such a manner as would cause a reasonable person to have fear of an assault, bodily injury, or death."  Tenn. Code Ann. § 39-17-315(a)(2)(A).  While "harasses" is defined as "a course of conduct directed at a specific person which would cause a reasonable person to fear an assault, bodily injury, or death, including, but not limited to, verbal threats, written threats, vandalism, or unconsented-to physical contact.  Tenn. Code Ann. § 39-17-315(a)(2)(B).  "Repeatedly" is defined as "on two (2) or more separate occasions."  Tenn. Code Ann. § 39-17-315(a)(2)(C).  See, e.g., State v. Hoxie, 963 S.W.2d 737, 742-743 (Tenn. 1998).

In the present case, the record reflects that the appellant repeatedly (1) followed Jimmy to and from school; (2) repeatedly threatened to "beat up" Jimmy, (3) threatened Jimmy at Jimmy's place of employment; (4) swerved his vehicle so that Jimmy was unable to pass; (5) threw cigarette butts into his vehicle; and (6)

---

[2]The appellant's reliance upon Wilson is misplaced.  In Wilson, 924 S.W.2d at 651, the supreme court reversed the defendant's aggravated assault convictions based upon the lack of proof that the defendant fired shots into the residence intentionally or knowingly.  The court held that because there was no proof that the defendant knew that anyone was inside the residence that the requisite mens rea was not proven by the State.  Id.  Here, the appellant intentionally or knowingly displayed the gun in the presence of the victim coupled with the threat that he "should shoot" his victim.

5

damaged the window on Jimmy's truck. All of these actions would cause a reasonable person to fear an assault or bodily injury. The appellant's actions did achieve his intended results. Accordingly, the record contained sufficient evidence from which a rational trier of fact could have found the appellant guilty beyond a reasonable doubt.

## II. SENTENCING

Although the appellant argues that the trial court erred in denying an alternative sentence, in fact, the trial court imposed an alternative sentence of split confinement.[3] Nonetheless, because the appellant's argument only relates to that of total probation; our *de novo* review is limited to whether the appellant should have been granted total probation. The appellant argues that the trial court failed to consider:

(1) his diagnosis of bi-polar disorder following these offenses;
(2) his voluntary admission into Plateau Mental Health Center and Moccasin Bend Psychiatric Hospital;
(3) his enrollment in courses at Tennessee Technical Institute;
(4) his change of life since the incident.
(5) his reputation in the community; and
(6) his remorse.

At the time of sentencing, the appellant, a twenty-six year old high school graduate, testified that he had enrolled at Tennessee Technical Institute and was taking seventeen hours of classes. Although he had a sporadic work history, he was currently self-employed in the field of lawn-service and landscaping. The appellant also served six years in the United States Air Force, receiving an honorable discharge.

The appellant admitted that he had pending charges for assault, violation of

---

[3]In determining the length of the appellant's sentence, the trial court applied applied two enhancement factors: (1) prior criminal history and (8) failure to comply with conditions of release into the community. See Tenn. Code Ann. § 40-35-114 (1997). The trial court applied one mitigating factor, see Tenn. Code Ann. § 40-35-113(13), that the appellant was currently receiving counseling and on medication.

an order of protection, theft of firearms, and vandalism. The presentence report reflects that the appellant has prior convictions for contributing to the delinquency of a minor[4] and carrying a weapon. For these offenses, the appellant was placed on two years pretrial diversion in March 1996. During his diversion period, the appellant failed to report to the probation officer, failed to perform community service and failed to pay his court costs. Subsequently, the appellant was arrested on the instant charges and a motion was filed to terminate diversion. Following the present offenses but prior to the sentencing hearing, the appellant entered guilty pleas to misdemeanor drug possession and possession of drug paraphernalia. He received a suspended sentence of eleven months and twenty-nine days.

The appellant admitted that he had contemplated suicide and had voluntarily checked into an in-patient mental health facility for treatment. He testified that he was taking lithium carbonate which helps him control his anger. The accompanying medical report reflects that the appellant's problems include "depression, sleep problems, change of activity level, suicidal thoughts, inability to concentrate, irritability [sic], and grandiosity . . . . He appears to meet the criteria for . . . Bipoler [sic] II. . . . he has severe disturbance of functioning in all areas of his life."

In the presentence report, the appellant stated,

The charge of aggravated assault for which I was convicted did not happen. The charge is totally false. I have given Amber Griffith [sic] a ride from school. There was no argument and no gun. I was at the school, that's Upperman High, to pick up Joe Fernandez, Amber's cousin. The charge of stalking for which I was convicted is also totally false. I have no version of this charge because it just plain never happened.

Although the appellant argues the trial court did not consider his diagnosis of bipolar disorder and voluntary admission for treatment, the record reflects otherwise. Moreover, the trial court considered the appellant's college enrollment in

---

[4]This conviction arose from the appellant's relationship with the juvenile female victim in this case.

7

determining his sentence. In denying total probation, the trial court stated, "[U]nder the circumstances of your condition, I'd give you some credit for that and maybe a split confinement is more appropriate than Department of Corrections time, so one year split confinement. We haven't gotten the message to [the appellant]."

Upon our *de novo* review of the record, we agree that the record reflects a prior history of criminal convictions and that measures less restrictive than confinement have recently been applied unsuccessfully. See Tenn. Code Ann. § 40-35-103(1)(A) and (C). See generally, Tenn. Code Ann. § 40-35-401(d)(1997). When the record reflects that the trial court considered the relevant principles of sentencing, the trial court's determination is afforded the presumption of correctness. Tenn. Code Ann. § 40-35-401(d); see also State v. Bingham, 910 S.W.2d 448 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1995). Moreover, the appellant bears the burden of showing that the sentence imposed by the trial court is improper and that of establishing his suitability for probation. See Tenn. Code Ann. §§ 40-35-210(b)(3), -303(b). The appellant has failed to carry his burden. This appellant continues to demonstrate behavior evincing a lack of rehabilitative potential. See Tenn. Code Ann. § 40-35-210(b)(4). Additionally, the appellant cannot demonstrate that probation will "subserve the ends of justice and the best interest of both the public and the defendant." Bingham, 910 S.W.2d at 456. Accordingly, he has failed to establish the impropriety of the trial court's denial of total probation.[5]

The judgment of the trial court is affirmed.

---

[5]The appellant frames his issue of error within the context of denial of an alternative sentence, specifically the denial of total probation. We further note that a community corrections sentence constitutes neither a probated nor suspended sentence. The appellant is statutorily ineligible for community corrections for the following reasons: (1) he was convicted of aggravated assault, a crime against the person; (2) he used a weapon in the commission of the aggravated assault; and (3) he failed to demonstrate that the relevant offenses were causally connected to a chronic of history alcohol abuse, drug abuse, or mental health problems. See Tenn. Code Ann. §§ 40-36-106(a)(2), (4), and -106(c).

_____
DAVID G. HAYES, Judge


CONCUR:


_____
JERRY L. SMITH, Judge


_____
NORMA MCGEE OGLE, Judge