# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
July 24, 2002 Session

## STATE OF TENNESSEE v. TRAVIS J. WOODS

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 228499, 228500, 231327     Douglas A. Meyer, Judge**

_____

**No. E2001-01027-CCA-R3-CD**
**July 16, 2003**
_____

The defendant, Travis J. Woods, was convicted of attempted first degree murder, aggravated assault and reckless endangerment. For these convictions the defendant received sentences of 35 years, 6 years, and 2 years, respectively. The sentences were ordered to run consecutively. In this appeal the defendant argues that: (1) the evidence is insufficient to support the verdicts of guilt for attempted first degree murder and aggravated assault, (2) the trial court erroneously denied the defendant's motion to dismiss the aggravated assault charge pursuant to Tenn. R. Crim. P. 8, (3) the trial court erred in refusing to order ballistics testing, (4) the jury instructions were erroneous, and (5) the sentence is excessive. We find no reversible error in this record and therefore affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and JOE G. RILEY, JJ., joined.

Charles P. Dupree, Chattanooga, Tennessee, for the appellant, Travis J. Woods.

Paul G. Summers, Attorney General & Reporter; Angele M. Gregory, Assistant Attorney General; Bill Cox, District Attorney General; and Parke Masterson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Factual Background

On December 4, 1998, Kevin Cameron, his girlfriend and two children were living at 1802 Olive Street in Chattanooga. The defendant, Travis Woods, and two individuals identified as Eric Jones and Terry Jackson often stood on the street in front of Cameron's house. Woods, Jones and Jackson were apparent street dealers in illegal drugs. Cameron had repeatedly requested that the trio take their business elsewhere because of the adverse impact drug dealing was having on children in

the neighborhood. As a result of these requests relations between Cameron and the defendant and his compatriots were very strained.

On December 4, Cameron once again had an altercation with Jackson and Jones who left the neighborhood only to return a short time later with guns. The defendant, who was observing the return of his now armed companions, approached Jackson and Jones, and an argument ensued as to whether it was prudent to shoot Cameron in front of his own home.

As Cameron began walking toward his home the defendant ran behind him and started shooting at Cameron, who was now running for his life. As he ran toward his residence Cameron saw his pregnant girlfriend, Rhonda Walker, was on the porch. Cameron dove on top of her to protect her from the gunfire while the defendant continued shooting at him. Bullets were flying everywhere, and one struck the porch of Cameron's neighbor, Dennis Hampton, who was standing on his porch. Cameron was wounded in the back and leg by the gunfire. The bullet was left in Cameron's back because of the dangers of removing it, and he had a three-to-four-inch scar from the bullet wound to his leg.

Based upon the foregoing the defendant was convicted of the attempted first degree murder of Cameron, the reckless endangerment of Dennis Hampton, and the aggravated assault of Cameron's girlfriend, Rhonda Walker.

Sufficiency of the Evidence

The defendant maintains that the evidence is insufficient to convict him of attempted first degree murder and aggravated assault. He argues that there is no proof of premeditation in the shooting of Mr. Cameron and no proof that he intentionally assaulted Rhonda Walker. We must respectfully disagree.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" state's witnesses and resolves all conflicts in the testimony in favor of the state. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the state "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence in evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim.

App. 1990).  Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779.


## A. Attempted First Degree Murder

To convict the defendant of attempted first-degree murder, the jury must have found that the defendant unlawfully, intentionally, and with premeditation attempted to kill Kevin Cameron.  See Tenn. Code Ann. §§ 39-12-101,-13-202.  A premeditated act is one done after exercise of reflection and judgment.  See id. § 39-3-202(d).  "[W]hether premeditation is present is a question of fact for the jury, and it may be inferred from the circumstances surrounding the" commission of the crime. State v. Billy Gene Debow, Sr., No. M1999-02678-CCA-R3-CD, 2000 WL 1137465, at *4 (Tenn. Crim. App. at Nashville, Aug. 2, 2000); see also State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997); State v. Anderson, 835 S.W.2d 600, 605 (Tenn. Crim. App. 1992).  Some relevant factors that tend to support the existence of premeditation include: "the use of a deadly weapon upon an unarmed victim; the particular cruelty of the killing; declarations by the defendant of an intent to kill; evidence of procurement of a weapon; preparations before the killing for concealment of the crime, [ ] calmness immediately after the killing," and evidence that the victim was retreating or attempting to escape when killed.  Bland, 958 S.W.2d at 660; see also State v. West, 844 S.W.2d 144, 148 (Tenn.1992).  "[T]he fact that repeated blows (or shots) were inflicted on the victim is not sufficient, by itself, to establish first-degree murder."  State v. Brown, 836 S.W.2d 530, 542 (Tenn.1992).

In the instant case, the victim got into a heated argument with two of the defendant's friends, Terry Jackson and Eric Jones.  By all accounts, the defendant was not a party to that initial argument but later joined Jackson and Jones in the street, stating to the victim, "Are you talking to me?" Apparently, the defendant originally stated to Jackson and Jones that they shouldn't shoot the victim in front of his own house.  The defendant began wrestling with Jackson and Jones while arguing over the wisdom of shooting the victim.  According to Rhonda Walker, the defendant then walked away from Jackson and Jones, stating, "I'll do it . . ., You don't need to do it."

At that point, the defendant, armed with a gun, began to chase the unarmed victim, firing at least five or six shots at the victim.  As he ran after the victim, the defendant stated, "Yeah, it's me, I'm going to kill you."  The defendant continued to chase the victim around the duplex, firing two shots into the victim.  The victim, Rhonda Walker, Robert King, Dennis Hampton, and Lorenzo McMillan all identified the defendant as the shooter.  Each of those witnesses was familiar with the defendant prior to the shooting.

It is clear from the evidence that the defendant's comments and actions, the infliction of multiple wounds, and the use of a deadly weapon against the unarmed victim demonstrate that the defendant premeditated the attack on Cameron and intended to kill him.  This issue is without merit.

## B. Aggravated Assault

To convict the defendant of aggravated assault, the jury must have found that the defendant intentionally or knowingly caused Rhonda Walker to fear imminent bodily injury by his use or display of a deadly weapon. See Tenn. Code. Ann. §§ 39-13-101, 102.

One acts "knowingly" when, with respect to a result of the person's conduct, the person "is aware of the conduct or is practically certain that the conduct will cause the result, irrespective of his or her desire that the conduct or result will occur." Tenn. Code Ann. § 39-11-302(b), Sentencing Commission Comments.

The defendant contends that he should not have been convicted of aggravated assault because he did not specifically intend to assault Rhonda Walker. However, a defendant need only act with the awareness that his conduct is reasonably certain to cause *others* to fear imminent bodily injury. See State v. Wilson, 924 S.W.2d 648 (Tenn. 1996) ("[T]he state's contention that they are not required to prove that the defendant intended to assault 'a specific person who was assaulted' is correct. . . ."); see also State v. Craig Bryant, No. 02C01-9707-CR-00286, 1999 WL 5633, at *8 (Tenn. Crim. App. at Jackson, Jan. 8, 1999) (affirming the defendant's conviction for aggravated assault where the evidence was "sufficient to support the conclusion that the Defendant acted with the awareness that his conduct was reasonably certain to cause others, including the cashier at the drive-thru window, to fear imminent bodily injury").

In this case, although the defendant intended to shoot and kill the victim, Kevin Cameron, there was sufficient evidence that he also acted with the reasonable certainty that Rhonda Walker would be caused to fear imminent bodily injury, as well. According to Kevin Cameron's testimony, he jumped on top of his pregnant girlfriend, who had been standing on the front porch of the duplex during the shooting, because he was afraid for her safety. Ms. Walker testified that she was standing on the front porch "screaming at the top of her lungs" while the defendant was firing shots. She testified that she was "frozen" and could not move. She testified that she feared that she would be hurt or killed and was fearful because she was eight-and-a-half months pregnant at the time. Indeed, a bullet was fired into the ceiling of the front porch on which Ms. Walker was standing. Ms. Walker reasonably believed that she was in imminent danger of being hit by one of the defendant's bullets.

There was nothing blocking the defendant's view of the front porch on which Rhonda Walker stood. It would have been very difficult for the defendant not to see Ms. Walker, who was standing on the front porch and "screaming at the top of her lungs." Certainly, the defendant also saw Ms. Walker as he approached Kevin Cameron and continued to shoot while Cameron was lying on top of Ms. Walker. Ms. Walker testified that the defendant continued to fire shots as Cameron lay on top of her. This testimony was sufficient evidence from which the jury could have concluded that the defendant knowingly continued firing his weapon at the front porch of the duplex with the awareness that the shooting was reasonably certain to cause both Walker and Cameron to fear

imminent bodily injury. There is more than sufficient evidence supporting the defendant's conviction for the aggravated assault of Rhonda Walker.

### Denial of Motion to Dismiss the Indictment for the Aggravated Assault of Rhonda Walker

The defendant contends that the trial court erred in denying his motion to dismiss the indictment charging the aggravated assault of Rhonda Walker. Without a full recitation of all the machinations leading to the situation, it appears that this indictment was returned approximately six months after the indictments charging the attempted murder of Mr. Cameron and the reckless endangerment of Dennis Hampton. The defendant moved to dismiss this later indictment on the grounds that it constituted "saving back" charges arising out of a single criminal episode and therefore violated Tennessee Rule of Criminal Procedure 8(a) which provides for the mandatory joinder of such offenses.

> In King v. State, 717 S.W.2d 306, 308 (Tenn. Crim. App. 1986) this Court held:
>> We do not perceive that any evil results from subsequent indictments being returned against a defendant charging him with additional offenses which are based on the same conduct or which arise from the same conduct or which arise from the same criminal episode upon which prior indictments have been returned, when the defendant has not been tried on any of the offenses at the time the subsequent indictments are returned. . . . [T]he purpose of Rule 8 is to prevent multiple trials on charges arising from the same conduct or from the same criminal episode except under the circumstances stated in the rule.

Id. at 308.

Since the defendant had not been tried on any charges arising out of the criminal episode in question, it is irrelevant that one indictment alleging a criminal act in that episode was returned subsequently to other indictments arising out of the same episode. This issue is without merit.

### Ballistics Testing

The defendant contends that the trial court should have ordered the state to perform a ballistics test on a weapon found near the scene of the shooting. In addition, he maintains the court should have appointed a ballistics expert to examine the weapon. Finally, the defendant claims that the trial court erred in not admitting this weapon into evidence at trial.

On February 28, 2000, the defendant filed a Motion for Exculpatory Evidence, asking the court to order the state to perform a ballistics test on a weapon found by police relating to this case.

The defendant alleged that the state had advised both the court and defense counsel that it was in the process of obtaining a ballistics report on the weapon. A hearing was held on that motion on February 29, 2000. At that hearing, defense counsel stated:

> [U]pon representations of the State last time we had this trial set back in December, we were informed that they were conducting ballistics tests on some evidence that was found at the scene . . . .
>
> It's our client's opinion that that evidence may very well be exculpatory, and I was informed yesterday by Mr. Masterson that there was never was any test, not that they just decided not to test the weapon, but that there never was one, even at the time the State represented to the Court that there was one.
>
> I don't think we would be doing our client service, Judge, if we allowed this trial to go on without that possible exculpatory evidence. . . .
>
> I don't know if the Court can order the State to have the weapons tested or have the ballistics tests done, but I believe he's entitled to all exculpatory evidence possible.

The state responded:

> We don't have the gun. In checking the evidence, I've been to the crime scene, I've met with police, I've been everywhere. There was some belief that there were some shells in this case. There are no shells. No shells were ever recovered. I met with the ID tech. No shells were ever recovered.
>
> I've discussed it with all the witnesses, and as it turns out, the weapon used in this case was a revolver and it was never recovered, so we don't have anything. . . .
>
> A gun was found a few blocks away in a house that may have been related to the case but not as the weapon that was fired. . . . There was a gun put in the garbage can but not the gun that was used in this case. We don't even intend to use it. I don't think I could make it relevant to this case if I tried to.

The state suggested it believed the defendant was seen with two guns that evening:

Judge, to clarify . . . there were at least two guns on the scene. One was an automatic, one was revolver. The revolver was used in the shooting, the automatic was not. It may be the same automatic, it may not be, but I still can't make it relevant to the case in this shooting because it wasn't the weapon that the witnesses saw fired.

The trial court determined that the gun was not material to the defendant's case. The trial court stated, "Some other gun is not material. An individual may own several guns." The court then denied the defendant's motion requesting a ballistics report. The court noted that there was no ballistics report to be discovered and that it did not feel that a ballistics test could be, in any way, exculpatory because the weapon found could not have fired the bullet that hit the victim.

The state never argued that the weapon found near the scene was the weapon used in the shooting. In fact, the state maintained that the recovered weapon was not the weapon used to shoot Mr. Cameron. This Court is unaware of any authority for the proposition that ballistics testing should be required for a weapon that no one alleges was the weapon used to commit the crime being prosecuted. Under these circumstances we can discern no need for the appointment of a ballistics expert for the defense. Indeed, we can find no defense request for such an expert. Finally, there is nothing in the record indicating that the defendant sought to introduce the recovered weapon into evidence, but was prohibited from doing so. We find no reversible error with respect to this issue.

### Jury Instructions

The defendant alleges that two of the trial court's instructions to the jury were erroneous. We will address each contention in turn.

### A. Reasonable Doubt Instruction

The trial court instructed the jury that

> [i]t is not necessary that each particular fact should be proved beyond a reasonable doubt, if enough facts are proved to satisfy the jury beyond a reasonable doubt of all the facts necessary to constitute the crime charged.

The defendant maintains that this instruction lessens the requirement for jury unanimity with respect to the facts constituting the offense being prosecuted. However, this instruction, which is currently part of Tennessee Pattern Criminal Instruction 42.03, has been approved by our state supreme court as an accurate statement of the law. See State v. Bane, 853 S.W.2d 483, 488 (Tenn. 1993). This issue is without merit.

<u>B. Instruction that Should Jury Find Guilt</u>
<u>Trial Court will Assess Punishment</u>

The trial court also instructed the jury that should the panel find the defendant guilty, the court would assess punishment at a later hearing. Although he cites no authority for the proposition, the defendant maintains that this instruction given to the jury alleviated any concerns that the jury might have had as to the result of its verdict.

Prior to May 18, 1998, upon request of either party, trial courts were directed to instruct juries as to the possible range of punishment that a criminal defendant could receive if convicted. <u>See</u> Tenn. Code Ann. § 40-35-201(b) (1997). In 1998 the General Assembly amended section 40-35-201(b) to provide that such an instruction not be given in trials occurring after May 18, 1998.

However, nothing in Tennessee Code Annotated section 40-35-201(b) as amended in 1998 prohibits a trial court from informing the jury that the court, not the jury, is responsible for assessing punishment in a case such at that presently before this court. We are also unaware of any federal or state constitutional provision that entitles a defendant to have the jury labor under the belief that it may have some sentencing function when in fact it does not.[1] Indeed it could not have come as a shock to jurors that the trial judge was to sentence the defendant should the panel find him guilty. This issue is likewise without merit.

<u>Sentencing</u>

The defendant raises three challenges to his sentence. First, he maintains that the trial court used an incorrect presumptive sentence for the attempted murder conviction. Second, the defendant argues that the trial court misapplied a number of enhancement factors at sentencing. Lastly, the defendant that contends he was inappropriately given consecutive sentencing.

<u>A. Standard of Review</u>

In calculating a defendant's sentence, a trial court must consider a variety of factors including: evidence presented at trial and sentencing hearing, the presentence report, the principles of sentencing, the nature and characteristics of the offense, statements made by the offender; a defendant's potential for rehabilitation, and any mitigating or enhancing factors. <u>See</u> Tenn. Code Ann. § 40-35-210(b). In addition, whenever a court imposes a sentence, it must record any mitigating or enhancement factors applied and note its findings of fact on the record. <u>See</u> Tenn. Code Ann. § 40-35-210(f). Where the court does consider each of the required factors in determining a sentence and amply notes its findings on the record, review of that sentence is <u>de novo</u> with a presumption that the court's determinations are correct. <u>See</u> <u>State v. Ashby</u>, 823 S.W.2d 166, 169

---

[1]Tennessee Code Annotated section 40-35-201(b) makes allowance for juries to be instructed as to their sentencing role in capital cases and in the levying of fines over $50. <u>See</u> Tenn. Const. Art. VI, § 14; Tenn. Code Ann. § 39-13-204-205.

(Tenn. 1991). In this case, we cannot say that the trial court made sufficient factual findings to warrant a presumption of correctness of review. Thus, our review will be purely de novo.

## B. Presumptive Sentence

The defendant first argues that first degree murder is a Class A felony, and thus attempted first degree murder is a Class B felony. See Tenn. Code Ann. § 39-12-107 (grading attempt as one classification lower than crime attempted). Thus, the defendant argues that the sentencing range for a Range II offender such as himself is 12-20 years with a presumptive minimum sentence of 12 years. See Tenn. Code Ann. § 40-35-210(c). The fallacy in the defendant's argument is that first degree murder is not a Class A felony, but is excluded from classification for sentencing purposes. See Tenn. Code Ann. § 40-35-101 (Sentencing Grid). Sentencing for first degree murder is prescribed by Tennessee Code Annotated section 39-13-202(c). This Court has previously found attempted first degree murder to be a Class A felony. State v. Fred Delaney, No. 02C01-9804-CR-00105 (Tenn. Crim. App. at Jackson, June 3, 1999); State v. Kathy Ball, No. 03C01-9512-CC-00387 (Tenn. Crim. App. at Knoxville, Oct. 31, 1997).

The sentencing range for a Range II offender convicted of a Class A felony is 25-40 years. See Tenn. Code Ann. § 40-35-112(b)(1). The presumptive sentence is the mid-point of the range or 32.5 years. This is the presumptive sentence used by the trial court in this case, and it is correct.

## C. Application of Enhancement Factors

The defendant contends that the trial court erred in applying the enhancement factor that the defendant has a criminal history beyond that necessary to place him in Range II. See Tenn. Code Ann. § 40-35-114(2) (Supp. 2002). However, the record reflects that the defendant has a criminal record extending back twenty-two years prior to the instant case. The defendant has a history of arrests and convictions for felonious assault, assault with intent to commit first degree murder, aggravated assault, first degree burglary, sale or delivery of a controlled substance, and a string of numerous misdemeanor convictions. The defendant's criminal record amply supports the application of this enhancement factor.

The trial court also applied the enhancement factor codified in Tennessee Code Annotated section 40-35-114(9), that the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release into the community. See id. § 40-35-114(9). Again, however, a review of the pre-sentence report on the defendant reveals a lengthy history of the defendant having violated the conditions of probationary sentences by committing additional crimes. This twenty-year history of disregard for the conditions of numerous suspended sentences makes application of enhancement factor (9) imminently appropriate.

The defendant also argues that the trial court erred in applying the enhancement factor at Tennessee Code Annotated section 40-35-114(2), that the felony "resulted in death or bodily injury

or involved the threat of death or bodily injury to another person and the defendant has previously been convicted of a felony that results in death or bodily injury." Id. § 40-35-114(12). The defendant argues that the age of his 1980 conviction for assault with the intent to commit first degree murder precludes application of this factor. However, this Court has held that there is no age limit on convictions which may be used to make up a defendant's criminal history for sentencing purposes. See State v. Davis, 824 S.W.2d 109, 112 (Tenn. Crim. App. 1991). Thus application of enhancement factor (12) was appropriate.

Finally, we agree with the defendant that it was error for the trial court to apply the enhancement factor found at Tennessee Code Annotated section 40-35-114(11), that "[t]he defendant had no hesitation in committing a crime when the risk to human life was high." Tenn. Code Ann. § 40-35-114(11) The risk to human life is inherent in the crimes for which the defendant was convicted. Nevertheless, the remaining properly applied enhancement factors amply justify the imposition of a sentence of 35 years for attempted first degree murder, just 2.5 years above the presumptive sentence.[2]

### D. Consecutive Sentencing

The defendant complains that his sentences were erroneously ordered to be served consecutively. We again must respectfully disagree.

Tennessee Code Annotated section 40-35-115(2) provides that consecutive sentencing is appropriate for an offender whose record of criminal activity is extensive. The defendant has a criminal history dating to 1976. As noted above the record includes arrests and/or convictions for a number of felonies, some violent, and a numerous string on misdemeanors. Moreover, efforts at leniency have apparently failed to rehabilitate the defendant's criminal behavior. Under these circumstances we believe consecutive sentencing is appropriate for the defendant.

### Conclusion

In light of the foregoing, the judgment of the trial court is AFFIRMED.

_____
JERRY L. SMITH, JUDGE

---

[2]Although the trial court found several enhancement factors applicable to the aggravated assault and reckless endangerment convictions, the court left these sentences at their minimum.