# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs November 5, 2002

## STATE OF TENNESSEE v. BRUCE MARVIN VANN

### Appeal from the Circuit Court for Madison County
### No. 01-551     Donald H. Allen, Judge

---

### No. W2002-00161-CCA-R3-CD  - Filed March 31, 2003

---

The defendant, Bruce Marvin Vann, was convicted of aggravated assault.  The trial court imposed a six-year sentence.  In this appeal of right, the defendant presents five issues for review: (1) whether the indictment sufficiently described the offense of aggravated assault; (2) whether the evidence was sufficient; (3) whether the trial court erred by failing to act as thirteenth juror; (4) whether the trial court erred by allowing prior convictions as impeachment evidence; and (5) whether the trial court erred by refusing to apply a mitigating circumstance.  The judgment is affirmed.

### Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed

GARY R. WADE, P.J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Didi Christie, Brownsville, Tennessee (on appeal), and Vanessa D. King, Assistant District Public Defender (at trial), for the appellant, Bruce Marvin Vann.

Paul G. Summers, Attorney General & Reporter; P. Robin Dixon, Jr., Assistant Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

        At approximately 2:00 P.M. on April 9, 2001, Sergeant David DeMoss of the Jackson Police Department arrived at Lincoln Courts to investigate a report made by Darren Douglas that he had been the victim of an aggravated assault.  The defendant had reportedly been a witness to the incident.  When Douglas returned to the scene accompanied by Sergeant DeMoss and another officer, the suspect, who was sitting on a porch, ran, leaving behind a .45 caliber black gun.  The defendant, who was standing near the front porch with a woman when the police arrived, picked up the gun and ran several feet to a small opening in a fence.

At trial, Sergeant DeMoss testified that upon arriving at the scene, he attempted to arrest the suspect, who was later identified as Kevin Transou. As Transou tried "to jerk away and run," Sergeant DeMoss and Officer Mark Lott placed him on the ground and began to apply handcuffs. At that point, Sergeant DeMoss saw the defendant "shoot" towards the porch, grab the pistol, and run. Sergeant DeMoss drew his weapon and ordered the defendant to "drop it." The defendant ignored the command and ran toward a fence at the back of the complex. According to Sergeant DeMoss, the defendant, who was "swinging and waving the pistol" wildly as he ran, tried to "squeeze through the fence," turning to one side as he did so, and "as [t]he pistol [came] up in my direction . . . I fired a shot at him." Sergeant DeMoss testified that he experienced fear for himself and the others in the vicinity when the gun was pointed in his direction. He said that he was also concerned about Officer Lott, who was still struggling to gain control of Transou. The defendant, who was struck by the single shot in his upper left leg, fell to the ground and dropped the pistol.

At trial, Douglas, who testified for the state, claimed that the defendant had thrown the gun down before passing through the fence but that he continued to run from Sergeant DeMoss. Douglas, a friend of the defendant, who had remained in his car on the street as the arrests were being made, confirmed that Sergeant DeMoss had ordered the defendant to stop before the shot was fired. Douglas described the defendant as "trying to hide" the gun. He stated that the defendant did not aim the gun at Sergeant DeMoss.

Officer Lott testified that he was helping subdue Transou when he heard Sergeant DeMoss yell, "Gun." He described the defendant as "pretty much flailing the gun . . . wildly" as he ran. Officer Lott testified that he saw "the gun barrel stick back through the fence" as the defendant climbed through it and "that's when Sergeant DeMoss shot him." He confirmed that the gun was pointed in the direction of Sergeant DeMoss, who was a distance of only five or six feet away at the time the shot was fired. The officer contended that the defendant did not drop the weapon until he was shot. The weapon was found on the side of the fence opposite the officers. As the shots were fired, Transou fled on foot from Officer Lott who, after a chase, finalized his arrest.

Sergeant Stacy Hutchins identified the weapon found at the crime scene as a High Point .45. She found seven rounds inside the magazine of the weapon and one in the chamber, indicating its readiness to be fired.

James Bruce, who was visiting nearby at the time of the shooting, testified for the defense. He stated that from his vantage point, he only saw one gun, the one that Sergeant DeMoss had in his possession. Bruce stated that he saw the defendant squeeze through the fence but lost sight of him when he fell down after being shot in the back of the leg. He was unable to say whether the defendant was armed.

The defendant, who testified on his own behalf, confirmed that Transou had "pulled a gun on [Douglas]." He claimed that after Douglas sped away, he admonished Transou, who was intoxicated, "[You] didn't have to do him like that." The defendant contended that when Sergeant DeMoss and Officer Lott arrived at the scene, Sergeant DeMoss picked up the weapon and, while

Transou was being arrested by Officer Lott, Sergeant DeMoss "came toward me, and I took out running." The defendant claimed that he had informed the officers that Transou was drunk and commented that "they didn't have to do him like that because they was really just roughing him up." The defendant denied altogether having picked up Transou's gun from the front porch. He asserted that he never had the weapon in his hand, that he did not point a gun at anyone, and that he ran only because he was about to be arrested. During cross-examination, the state introduced judgments of conviction for reckless endangerment with a vehicle and evading arrest for which the defendant had received two-year sentences.

I

Initially, the defendant alleges that the indictment was defective, having failed to sufficiently describe the offense. In response, the state argues that because the defendant failed to include the issue in his motion for new trial, the doctrine of waiver applies. See Tenn. R. App. P. 3(e). In the alternative, the state argues that the indictment was sufficient.

The charging document, in pertinent part, contains the following information:

[T]hat BRUCE MARVIN VANN on or about April 9, 2001, in Madison County, Tennessee, and before the finding of this indictment, did intentionally and/or knowingly by displaying and/or using a deadly weapon, to-wit: a gun, a more particular description of which to the Grand Jurors aforesaid is unknown, cause DAVID DEMOSS to reasonably fear imminent bodily injury, in violation of Tenn. Code Ann. § 39-13-102, all of which is against the peace and dignity of the State of Tennessee.

The defendant submits that the failure to include the specific subsection of the statute, making reference to the use of a gun as opposed to serious bodily injury as the method of aggravation, results in an incomplete, defective indictment. He cites Tennessee Code Annotated section 40-13-202, which requires that the indictment state "the facts constituting the offense in ordinary and concise language." Because an assault can be committed either by serious bodily injury or by the use of a deadly weapon, he argues that the failure to include the subsection was fatal to the prosecution.

In support of his argument, the defendant makes reference to the holding in State v. Joe David Sloan, No. W2000-02861-CCA-R3-CD (Tenn. Crim. App., at Jackson, Jan. 4, 2002), wherein a panel of this court modified a conviction of felony evading arrest to misdemeanor evading arrest because the indictment charged the latter crime rather than the former. In that case, the panel determined that the indictment, which failed to list the appropriate statutory subsection, did not sufficiently allege the elements of Class E felony evading arrest in order to satisfy either the constitutional or statutory purposes of the indictment:

When a statute includes three different classifications of an offense, citation of the "appropriate" or "pertinent" statute logically requires that the appropriate subsection

be named in order for the indictment to be sufficient to support a conviction. Because the indictment in issue omitted the subsection number which would enable the accused to know that he was charged with a Class E felony, and the specific language (used by the State in drafting the indictment) alleges the offense constituting misdemeanor evading arrest, we hold that the indictment in this case only alleged the offense of misdemeanor evading arrest.

Slip op. at 6.

Generally, defenses based upon indictment deficiencies must be presented prior to trial. Tenn. R. Crim. P. 12(b)(2), (f). A valid indictment is essential to prosecution, however, and may be subject to attack at any time when the content does not charge an offense or does not confer jurisdiction. Dykes v. Compton, 978 S.W.2d 528, 529 (Tenn. 1998). A criminal indictment must include a sufficient description of the offense to ensure that the defendant understands the nature of the charge. Jackson v. Virginia, 443 U.S. 307, 314 (1979). The essential functions of the indictment are to provide notice of the charge, enable entry of a proper judgment upon conviction, and protect against double jeopardy. State v. Byrd, 820 S.W.2d 739, 741 (Tenn. 1991) (citing State v. Pearce, 7 Tenn. (Peck) 66, 67 (1823); State v. Haynes, 720 S.W.2d 76, 82 (Tenn. Crim. App. 1986)).

Article I, section 9 of the Tennessee Constitution guarantees that "in all criminal prosecutions, the accused [has] the right . . . to demand the nature and cause of the accusation against him, and have a copy thereof." Tenn. Const. art. I, § 9. Tennessee Code Annotated section 40-13-202, cited by the defendant, provides, in pertinent part, as follows:

The indictment must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment . . . .

Tenn. Code Ann. § 40-13-202.

In State v. Hill, 954 S.W.2d 725, 729 (Tenn. 1997), our supreme court held that an indictment charging aggravated rape was valid even though it did not allege a culpable mental state because "the required mental state [could] be inferred from the nature of the criminal conduct alleged." In State v. Stokes, 954 S.W.2d 729 (Tenn. 1997), an indictment for rape of a child was determined to be sufficient to vest the trial court with jurisdiction where it utilized the language of the statute but alleged no culpable mental state. A similar result occurred in Ruff v. State, 978 S.W.2d 95, 100 (Tenn. 1998), where the charges included aggravated sexual battery, aggravated rape, and aggravated kidnaping, and the court held that "where the constitutional and statutory requirements outlined in Hill are met, an indictment which cites the pertinent statute and uses its language will be sufficient to support a conviction." Finally, in State v. Barney, 986 S.W.2d 545, 547 (Tenn. 1999), our supreme court ruled that intent could be logically inferred from an indictment

-4-

including charges of rape of a child and aggravated sexual battery where it was alleged that the defendant had engaged in "unlawful sexual penetration" and "unlawful sexual contact" with the victim.

In State v. Wilson, 31 S.W.3d 189, 191-92 (Tenn. 2000), our high court determined that an indictment charging delivery of cocaine which referenced the appropriate statute but did not include an allegation of the culpable mental state was sufficient despite the omission. Similarly, in State v. Carter, 988 S.W.2d 145, 148-49 (Tenn. 1999), our supreme court ruled that indictments for felony murder which made reference to the statute but failed to include the required mens rea were nevertheless sufficient. The court determined that a reference to the statute was sufficient notice of the required level of intent. Id. at 149.

In sum, the more recent decisions of our supreme court establish that an indictment is adequate when it achieves the overriding purpose of notice to the accused. Here, the charge was aggravated assault. The state referred to the proper statute, Tennessee Code Annotated section 39-13-102, which provides alternative theories of guilt for the same offense. Alternative theories of guilt within a single indictment are permissible. Additionally, the indictment alleges a criminal intent on the part of the defendant. Finally, there was no allegation of serious bodily injury and the culpable mental state was listed as knowing and intentional, which distinguishes aggravated assault, a C felony, from reckless aggravated assault, a D felony. See Tenn. Code Ann. § 39-13-102(a)(1)-(2). In our view, the content of the indictment was sufficient to place the petitioner on notice of the nature of the charges, confer jurisdiction upon the trial court, and protect against double jeopardy.

II

While the defendant concedes that he fled from the police, he argues that inconsistencies in the evidence offered by the state warranted an acquittal. For example, he submits that if police testimony placed the weapon in his right hand and he squeezed through the fence right side first, as evidenced by his being shot in the back of the left leg, "there is no physical way [he] could have pointed the gun at Sergeant DeMoss." The defendant further submits that the state was unable to establish that his actions were knowing or intentional rather than inadvertent. See State v. Wilson, 924 S.W.2d 648, 651 (Tenn. 1996) (holding that evidence that the defendant fired shots into a residence after an angry confrontation with its owner was insufficient to establish that the defendant intentionally or knowingly caused the victims to fear imminent bodily injury where there was no proof that the defendant was aware that the residence was occupied at the time).

On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956); Byrge

v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

In order to sustain a conviction for aggravated assault, the evidence must establish that the defendant intentionally or knowingly committed an assault as defined in Tennessee Code Annotated section 39-13-101 and either caused serious bodily injury to another or used or displayed a deadly weapon. Tenn. Code Ann. § 39-13-102(a)(1)(A)-(B). An assault may be committed, among other ways, when the defendant "[i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury." Tenn. Code Ann. § 39-13-101(a)(2). One acts intentionally "with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." Tenn. Code Ann. § 39-11-302(a). A person acts knowingly when, with respect to a result of the person's conduct, "the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-302(b).

Initially, possible discrepancies in the evidence would rarely warrant the reversal of a conviction on insufficiency grounds. This court may neither reweigh nor reevaluate the evidence and cannot substitute its inferences for those drawn by the jury. Here, the state established that while two officers attempted to handcuff and arrest Transou, the defendant grabbed a loaded pistol from the front porch and ran towards a fence, ignoring warnings by the officers to stop and to drop the weapon. As the defendant turned sideways in order to squeeze through a small open area, Sergeant DeMoss observed the barrel of a gun pointed in his direction. Because the defendant had ignored the directive of Sergeant DeMoss, it could be reasonably inferred that his resistance to arrest might escalate. That the defendant and Transou were together when the officers arrived and that Transou resisted arrest and struggled with the officers are circumstances that suggest that the defendant's actions also constituted an effort to resist. That Sergeant DeMoss experienced reasonable fear when the gun was turned in his direction is not at issue. It was the prerogative of the jury based upon the circumstances to infer that the defendant had either knowingly or intentionally aimed the barrel in the direction of the officer. Thus, the evidence is legally sufficient to support the verdict.

## III

Next, the defendant argues that the trial court failed to exercise its responsibilities to consider the evidence as a thirteenth juror. The allegation is made based upon comments made by the trial judge in overruling the motion for new trial:

> The court does not feel that it erred by not granting the defendant's motion for judgment of acquittal at the conclusion of the proof. Obviously again, this was strictly a jury question whether or not they chose to believe Mr. Vann's version, that is, he didn't even have a gun, or whether or not the jury chose to believe . . . what the officers testified happened.

-6-

Rule 33(f) of the Tennessee Rules of Criminal Procedure provides that a "trial court may grant a new trial following a verdict of guilty if it disagrees with the jury about the weight of the evidence." The purpose of the thirteenth juror rule is to be a "'safeguard . . . against a miscarriage of justice by the jury.'" State v. Moats, 906 S.W.2d 431, 434 (Tenn. 1995) (quoting State v. Johnson, 692 S.W.2d 412, 415 (Tenn. 1985)). The rule requires that the trial judge must be personally satisfied with the verdict. State v. Dankworth, 919 S.W.2d 52, 56 (Tenn. Crim. App. 1995).

In State v. Carter, 896 S.W.2d 119, 122 (Tenn. 1995), our supreme court acknowledged the restoration of the thirteenth juror rule as it existed at common law, thereby mandating that trial judges exercise the duty to function as a thirteenth juror in criminal cases. An order overruling a motion for new trial establishes a presumption that the trial court has exercised the duty and no explicit statement on the record is required. Carter, 896 S.W.2d at 122; see also State v. Robert Bacon, No. 03C01-9608-CR-00308 (Tenn. Crim. App., at Knoxville, Jan. 8, 1998). It is only when the trial court expresses dissatisfaction or disagreement with the jury verdict or makes statements indicating that it has absolved itself of its responsibility that the judgment should be set aside. See Bacon, slip op. at 19.

In State v. Moats, 906 S.W.2d 431 (Tenn. 1995), the state conceded that the trial court had failed to act as thirteenth juror by entering the judgment while expressing doubts about the weight of the evidence and concluding that it was inappropriate to overturn the jury verdict. Our supreme court determined that because the trial court had misconstrued its authority to grant a new trial under the thirteenth juror rule, a new trial was necessary:

> The trial judge is in a difficult position to make a thirteenth juror determination after a remand which would not occur until after the case works its way through the appellate courts. By that time, the trial judge is unlikely to have an independent recollection of the demeanor and credibility of all the witnesses.

Moats, 906 S.W.2d at 435.

Here, both the tone and content of the comments made by the trial judge during the hearing on the motion for new trial signal a satisfaction with the verdict. In fact, the trial judge described this as "a situation where the court does feel that the evidence was sufficient to support the verdict of aggravated assault." That is enough.

IV

Next, the defendant complains that the trial court erred by allowing the state to introduce prior convictions of felony reckless endangerment and felony evading arrest for impeachment purposes. The defendant argues that even though the charge was one of aggravated assault in this instance, the underlying facts were so similar to a reckless endangerment or evading arrest as to warrant exclusion.

Rule 609 of the Tennessee Rules of Evidence establishes that the credibility of the defendant may be attacked by presenting evidence of prior convictions so long as the convictions are punishable by death or imprisonment in excess of one year or for a crime involving dishonesty or false statement. The rule requires the state to provide written notice of the conviction and that the trial court determine that the probative value outweighs any unfair prejudice before the evidence may be introduced. See Tenn. R. Evid. 609(a)(3). Also, no more than ten years may have lapsed between the commencement of the prosecution and the defendant's release from confinement on a prior conviction. Tenn. R. Evid. 609(b). In balancing the probative value on credibility against the unfair prejudicial effect on the substantive issues, the trial court must consider whether the prior conviction is the same or similar to that at issue. State v. Mixon, 983 S.W.2d 661, 674 (Tenn. 1999). The admission of prior convictions cannot be the basis for reversal unless the trial court has abused its discretion. State v. Blanton, 926 S.W.2d 953, 960 (Tenn. Crim. App. 1996).

In determining the probative value of the prior convictions, the trial court must consider whether those convictions involve dishonesty. See State v. Gibson, 701 S.W.2d 627, 629 (Tenn. Crim. App. 1985). In our view, neither felony reckless endangerment nor felony evading arrest are indicative of dishonesty. Next, there must be an assessment of the probative value of the prior convictions on the issue of credibility. In this instance, as in State v. Walker, 29 S.W.3d 885 (Tenn. Crim. App. 1999), there was a "swearing match" among witnesses. That is, the jury had to assess the credibility of Sergeant DeMoss and Officer Lott and that of the defendant, who not only denied that he aimed the weapon but also claimed that he had no weapon at all. As in Walker, the prior felony convictions here were properly deemed probative. As argued by the defendant, there is a similarity between the crimes of reckless endangerment and felony evading arrest and the facts leading to the charge of aggravated assault in this case. Nevertheless, the crimes are sufficiently distinct from aggravated assault involving the use or display of a deadly weapon as to warrant admission. This court would defer to the discretionary authority of the trial court which determined that the probative value on the issue of credibility outweighed any prejudice despite any factual similarity. Cf. State v. Galmore, 994 S.W.2d 120 (Tenn. 1999).

V

As his last issue, the defendant argues that the trial court should have found as a mitigating factor that the crime was committed under circumstances indicating that it was unlikely that he had a sustained intent to violate the law. See Tenn. Code Ann. § 40-35-113(11). The trial court considered and rejected the factor after observing that the jury had concluded that the display of the deadly weapon was intended to place Sergeant DeMoss in fear.

Initially, the aggravated assault statute is rather unique in that it requires trial courts to consider as an enhancement factor that the victim was a law enforcement officer. See Tenn. Code Ann. § 39-13-102(d) (Supp. 2000). As a Range I offender, the defendant qualified for a sentence of between three and six years. See Tenn. Code Ann. § 40-35-112(3). The trial court found a total of four enhancement factors and no mitigating factors. The defendant had a prior criminal history which included two prior felonies and eight prior misdemeanor convictions ranging from possession of cocaine to driving on a revoked license and criminal impersonation. In addition to his felony

conviction for evading arrest, he had two prior misdemeanor convictions for evading arrest.  Also, the trial court determined that the defendant had a previous history of unwillingness to comply with the conditions of a sentence involving release into the community.  See Tenn. Code Ann. § 40-35-114(8) (1997).  He had twice absconded from probation and on one of those occasions, his probation was revoked.  Finally, the trial court determined that the aggravated assault was committed while the defendant was on probation for a prior felony offense.  See Tenn. Code Ann. § 40-35-114(13) (1997).

In our view, even if application of the mitigating factor of lack of sustained intent was warranted, its weight would have been minimal and, under all of the circumstances, it would not have served to reduce the six-year sentence.

Accordingly, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE